FILED

2022 Dec-26  AM 11:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MONTAGUE MINNIFIELD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.** |
| **v.** | ) | **22-cv-0299-MHH** |
| | ) | |
| **THE TOWN OF BROOKSIDE,** | ) | |
| **ALABAMA; and MICHAEL** | ) | **Jury Trial Demanded** |
| **JONES, individually and in his** | ) | |
| **capacity as Chief of Police of the** | ) | |
| **Town of Brookside, and KYLE** | ) | |
| **EFFERSON; and JAMES** | ) | |
| **SAVELLE, III,** | ) | |
| | | |
| **Defendants.** | | |

### AMENDED COMPLAINT

Plaintiff brings this action for appropriate declaratory and monetary relief against the above defendants, and as grounds:

### PARTIES TO THE COMPLAINT

1.    The Plaintiff, Montague Minnifield, is an adult citizen residing in Jefferson County, Alabama.  He is a former Birmingham Police officer who is retired on disability.

2.    The Town of Brookside ("Brookside") is a municipal corporation located within the Birmingham Division of Jefferson County, Alabama.

3.     Defendant Michael Jones was the Chief of police of Brookside at all times relevant to the facts of this litigation and is over 19 years of age and was a resident of Jefferson County, Alabama at such times.   He was the chief executive officer of the police department of Brookside, directing law enforcement by Brookside's police force.

4.     Defendants Kyle Efferson and Defendant James Savelle, III are both over 19 years of age and were both Brookside police officers who participated in the commission of the acts complained of against Plaintiff. They were acting for Brookside at all such times.

## JURISDICTION

5.     Plaintiff brings this civil rights suit pursuant to 42 U.S.C. § 1983 for violation of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the U. S. Constitution. This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.   Plaintiff also seeks supplemental jurisdiction over state causes of action. 28 U.S.C. §1367.

## FACTS

6.     On March 7, 2021 at after 12:30 a.m. Plaintiff was a passenger in a vehicle driven by a female friend. While lawfully travelling on I-22 their vehicle was stopped by two black SUV's which had tinted windows and were unmarked and bore

no insignia of law enforcement. Neither SUV had lights mounted on the outside to distinguish it from a normal passenger vehicle.

7.    Defendant Efferson approached Plaintiff's vehicle and told the driver that he was a Brookside officer.   He did not display insignia of law enforcement but told the driver that the vehicle had an improper tag light.   Alabama has issued reflective state license tags for many years, providing far greater visibility than would be provided by a small tag light bulb.

8.    The vehicle Plaintiff was riding in was proceeding at least 60 miles per hour down the unlighted barren Interstate highway as it passed the parked black SUV's of Defendants.

9.    The driver furnished her valid driver's license and proof of insurance. Plaintiff was seated in the front passenger seat with his seat belt properly fastened. He was looking at his cell phone when a bright light shined in his face.   He lowered his window and was told by the other officer that he had to produce his driver's license.

10.    Plaintiff, a retired Birmingham Police officer who had retired on job-related disability, replied that there was no need or reason to do so.   Plaintiff informed him of his police background and asked what jurisdiction they were from. Plaintiff asked the officer to call his supervisor but was told that the officer was the

supervisor, Agent J.   Plaintiff had tried to call Brookside, but that was cancelled by Agent J.

11.     As the officers would not identify themselves, Plaintiff did not produce his driver's license.   He was told that he would be arrested and he was arrested even though he had properly identified himself as a retired police officer. He was removed from the car, handcuffed and placed in the back of one of the SUV's.

12.     Plaintiff remained handcuffed in the car for about 30 minutes.   He suffered pain due to the shoulder injury which had required his disability retirement when his police motorcycle slid and crashed.   He was finally released from the police vehicle by the unnamed Agents who stated that a citation would be written charging the driver with having an improper tag light.

13.     The unknown officers drove off, leaving a traffic ticket written for the father of the female driver, charging him with violation of Ala. Code 32-5-240 even though he was never there and though the vehicle was driven by a female, his daughter.   The ticket had no name of any officer, only "Agent KE".

14.     Brookside is a town of less than 1,300 citizens, having only two-lane roads, no red lights and is separated from Interstate-22 by unincorporated land with at best a tiny connection of land along the road touching the interstate.   Yet Brookside had over 8 full-time and some part-time police officers who also work

overtime. It has only one business, no schools and a volunteer fire department.

15.    The police jurisdiction of Brookside is limited by Alabama law to 1.5 miles due to its limited population. There was nothing marked to delineate where the police jurisdiction of Brookside might be, and Brookside officers arbitrarily write on tickets "near Cherry Avenue" as was done to Plaintiff here.  The Brookside Police enter I-22 to stop motorists who are just passing by with no intention of entering the Town of Brookside whose main buildings are two miles from I-22.

16.    Brookside operates a municipal court which imposes fines and court costs for violations within the town limits and within its police jurisdiction. State law prohibits towns the size of Brookside from issuing speeding tickets on interstate highways. [Code of Ala. 32-5A-171(8)].

17.    Not having speeding citations as a source of revenue, Brookside has resorted to claims of obscure possible violations as justification for stopping, searching and fining motorists.   For an extended period, hundreds of motorists were stopped and prosecuted for violating a code section which was not made a violation unless prescribed actions were taken by the state law enforcement agency and the Alabama Department of Transportation. (Code of Ala. 32-5-77). Such preliminary steps were not taken, yet over 400 motorists continued to be stopped, often searched and fined. Another ruse often used is the stopping of motorists on the Interstate for

having one tag light out or having too bright a tag light even though Alabama has required reflective license plates for years.

18.    Brookside has operated its police and court system with the primary objective of obtaining revenue from motorists travelling on or near Interstate-22. It has had a continued practice of stopping and searching scores of vehicles daily, doing so without probable cause or reasonable suspicion of wrongdoing. In the year before this occurrence with Plaintiff, 2020, Brookside issued over 3,000 citations, gave over 2,000 traffic warnings and made 1,273 misdemeanor arrests.

19.    Brookside has used obscure and inapplicable code sections as a basis for stopping motorists.   Once stopped, motorists like plaintiff here were detained while their persons, belongings and vehicles were searched.   Defendants have brought additional charges against such persons, imposing enormous fines and costs as well as additional charges for towing and release of vehicles.

20.    One example of the thirst for revenue is the standard fee of $175 for merely signing a form which would authorize the Town's contracted wrecker to release an impounded vehicle to its owner. That is in addition to the $165 and $35 per day towing charges.   Between 2018 and 2020 the yearly vehicles impounded by Brookside increased from 50 to 789, with traffic citations increasing from 382 to 3,024 in 2020.

21.     Defendant Jones was the Chief of Police of Brookside and directed the department and set its policies and practices. He has been personally involved in the stopping and searching of motorists, doing so along with the police officers under him.  He has allowed and fosters the sort of actions complained of herein.  In a similar case in 2020, a Brookside officer and Lieutenant agreed that "the Chief is wanting to tow in these incidents" and towed a vehicle, leaving the driver on the side of the Interstate.

22.     Brookside has applied those funds to allow its police department to generate more revenue.   For years, including that of Plaintiff's seizure, Brookside had no budget but operated on funds from its police and court. These funds were used to employ more police officers and substantially increase the salary of the Town's prosecutor and judge.

23.     Brookside was so involved in the wholesale seizing of motorists that its officials failed to properly institute criminal charges against many arrested persons like Plaintiff here.   Alabama law has always required that any citation or complaint for arrest be properly executed and sworn before a magistrate or there is a lack of jurisdiction. [*Ex parte Dison,* 469 So.2d 662 (Ala. 1984)] Most charges bore the signature of the Magistrate [Clerk] and a date but no signature by the charging officer.

24.    In the tag-light ticket for Lloyd Rice the record owner of the vehicle, the computerized ticket listed only "AGENT KE".

25.    Brookside created and enforced a system primarily directed at obtaining revenue through fines, fees and forfeitures in order to fund and operate its police and court system. The Town Council appointed the municipal judge and prosecutor as well as imposing the $175 release fee for towed vehicles.   Increases in funding for these functions as well as the increase in the numbers of officers and payment of overtime were a result of the zeal to stop motorists like Plaintiff.

26.    The more revenue created, the more money was available for the Town, the municipal court, the prosecutor and the police department.   This is particularly true since Brookside has operated for years without a budget, operating from a revenue stream that required consistent income from police activities.

27.    A source of revenue was the mandated $175 fee for the release of vehicles which had been towed.   All of such fees remain with the Town and are quickly collectible, not being subject to court action or state oversight.   Defendants were found by a state audit to be not properly accounting for such funds.   The prompt and certain collection of such funds induced Defendants to illegally stop motorists like Plaintiff for possible vehicle impoundment.

28.    The stopping of vehicles and removal and search of motorists without

probable cause or reasonable suspicion is a violation of the Fourth Amendment and of Alabama's non-custodial arrest statute, Ala. Code § 32-1-4.

29.    Defendant Jones became Police Chief of the Town in 2018.   Soon thereafter and until his termination, Brookside embarked on a policy and practice of directing its police and court system primarily as a means of generating revenue. The numbers of police officers multiplied as did the arrests and impoundment of vehicles.   Scores of motorists were stopped on the Interstate and hailed to court, having to attend sessions where dozens of defendants were required to give a cell phone number and wait in their vehicles until room would be available in the Town's courtroom.   Revenues multiplied and were channeled back into police use.

30.    Even in 2019 the percentage of Brookside's annual revenue that came from fines and forfeitures was over 20% - double the typical threshold for presumptive unconstitutionality. This does not include the significant amounts of fines, fees and forfeitures that Brookside was unable to collect.

31.    Defendant Jones has been the chief policymaker for Brookside's police, being hired as Chief in March, 2018. In the preceding year, fiscal 2017, the Town amassed $51,473 in revenue from fines, fees, forfeitures and jail fees. Under Jones, that income increased during the 2019 fiscal year to $187,445.   Brookside more than tripled that in the fiscal year from 10/1/19 to 9/30/20, amassing $610,307, and

$710,025 in fiscal 2021.   By 2020 these court and forfeiture fees made up almost half of Brookside's annual revenue.

32.     None of the massive increases in revenue are coincidental. They are not the result of population increase or driver behavior nor meaningful increases in serious crime around Brookside.

33.     Instead, the massive increases in revenue after 2018 are the result of deliberate policies, practices and customs instituted by Brookside's policymakers to generate as much revenue as possible, almost all of which goes to the police, with additional windfalls to the town prosecutor and municipal court.   According to Mayor Bryan, after the police got their cut, Brookside "only profited $70,886" in 2020 from what the Town designated its "fines and forfeitures".

34.     Brookside's policymakers, including Chief Jones, the Mayor and town council knew and approved of Jones' abusive revenue-generating policies, practices and customs.   In an interview in late 2021, Chief Jones said (with Mayor Mike Bryan present and agreeing) that Brookside's policing is "a positive story" and that "a 600% increase" in annual revenue within two years is "a failure," because according to Chief Jones, "with more officers and more productivity you'd have more" revenue generation and increases.

35.     As a result of these policies and practices Brookside police sought ways

to justify towing vehicles.   Alleging that the driver is not the owner or refusing to check the internet for insurance coverage are ways used as justification for towing vehicles.   The towing process requires an initial stop and seizure.

36.    Plaintiff suffered mental anguish and pain by the manner in which he was treated by Brookside and its officers and employees.   The stopping by an unmarked black SUV with tinted windows disturbed Plaintiff as did his arrest and detention, being handcuffed and held away from his female driver by officers who would not identify themselves.   Plaintiff suffered physical pain and injury as a result of being handcuffed in the back of the police vehicle.

37.    The unknown officers lacked having reasonable suspicion that the driver of Plaintiff's vehicle had committed a traffic violation.   The initial reason for the stop was fabricated as justification for detaining and searching the vehicle and its occupants. Such stop constitutes an illegal seizure of Plaintiff in violation of the Fourth and Fourteenth Amendments of the U. S. Constitution.

## **CAUSES OF ACTION**

## COUNT I:   VIOLATION OF THE FOURTH AMENDMENT RIGHTS OF PLAINTIFF BY DEFENDANTS EFFERSON AND SAVELLE [SEARCH AND SEIZURE]

Plaintiff incorporates the factual allegations contained herein in ¶¶ 1-37.

38. Plaintiff has suffered a seizure by the actions of Defendants Efferson

and Savelle who stopped and detained him in violation of his constitutional rights under the Fourth and Fourteenth Amendments, with such having been done under color of state law in violation of 42 U.S.C. § 1983. The said action was without just or probable cause and without reasonable suspension.

39.   The vehicle stop was done to subject Plaintiff and the vehicle in which he was riding to illegal and improper search and seizure. Defendants acted with an improper motive of obtaining revenue for Brookside rather than legitimate law enforcement.   There was no reason for the detainment of Plaintiff in handcuffs and the search of the vehicle.

40.  Plaintiff suffered damage due to the intentional and unconstitutional actions of these defendants, being frightened and suffering mental anguish and being detained, handcuffed, searched, and held in a police vehicle

## COUNT II.   VIOLATION OF THE FOURTH AMENDMENT RIGHTS OF PLAINTIFF BY BROOKSIDE AND JONES [SEARCH AND SEIZURE]

Plaintiff incorporates the factual allegations contained herein in ¶¶ 1-37.

41.  Plaintiff was subjected to an illegal seizure and detention by the Defendant Town of Brookside, being subjected to violation of his Fourth and Fourteenth Amendment rights under the U.S. Constitution pursuant to 42 U.S.C. 1983.   Brookside has a policy and/or practice of allowing and encouraging its police

officers to stop, seize, detain and/or search motorists travelling along and near Interstate-22 with such action undertaken for spurious reasons in order to obtain revenue for Brookside. Such policy and practice was sanctioned and directed by Jones.

42. There was no reason for Defendants to detain Plaintiff and search the vehicle. The detention of Plaintiff continued far longer than what would be required for a citation to have been issued but was done to search Plaintiff and the vehicle.

43. The stop of Plaintiff as performed by the unnamed police officers was a part of much broader pattern and practice on the part of Brookside for its police to seize motorists without probable cause or reasonable suspicion of wrongdoing, basing the seizure on claims of obscure or non-existent violations of criminal law or claims of violations where none were committed. Defendant Brookside was deliberately indifferent in allowing and enforcing that policy and practice, encouraging its employees to make such seizures in order to amass revenue. The widespread use of that policy and practice caused the violation of Plaintiff's constitutional rights.

44. Plaintiff suffered damage due to the unconstitutional actions carrying out the policy and practice of Brookside, being frightened and suffering mental anguish and physical pain, being detained, handcuffed and searched.

## COUNT III.   FALSE ARREST AND IMPRISONMENT OF PLAINTIFF BY DEFENDANTS EFFERSON AND SAVELLE [STATE LAW CLAIMS]

Plaintiff incorporates herein the factual allegations of this complaint ¶¶ 1-37.

45.    Plaintiff was falsely arrested and imprisoned by the Defendants Efferson and Savelle. He was denied his personal liberty and handcuffed in Defendants' police car for a period of time far longer than would be necessary for the writing of a traffic citation.

46.    The Defendants lacked probable cause or reasonable suspicion to believe that he had committed an offense. The alleged offense of "no/improper tag light" did not justify the handcuffing and detention of Plaintiff.   Though Plaintiff had committed no offense, he was falsely arrested and imprisoned in violation of his rights under Alabama law.

47.   Plaintiff suffered mental anguish as a result of the actions of the actions of Defendant Efferson and Savelle who falsely arrested and imprisoned him in violation of his rights under Alabama law, being frightened and suffering mental anguish and physical pain.

## . COUNT IV.   FALSE ARREST AND IMPRISONMENT BY JONES AND BROOKSIDE IN VIOLATION OF STATE LAW

Plaintiff incorporates the factual allegations of this complaint in ¶¶ 1-37.

14

48.   Plaintiff was falsely arrested and imprisoned by the Brookside officers in violation of Alabama law. He was denied his personal liberty and handcuffed in Defendants' police car. The Defendants lacked probable cause or reasonable suspicion to believe that he had committed an offense.

49.   The two Brookside officers were acting in accord with the policy and practice approved by Brookside. Brookside enforced that practice of allowing its police officers to stop, seize, detain and/or search motorists travelling along and near Interstate-22 with such action undertaken for spurious reasons in order to obtain revenue for Brookside's police and court operations. As police chief, Defendant Jones directed the policy approved and enforced by Brookside to stop and seize motorists.

50.   The stop of Plaintiff as performed by Efferson and Savelle was part of a much broader pattern and practice on the part of Brookside to seize motorists without probable cause or reasonable suspicion of wrongdoing, basing the seizure on claims of obscure or non-existent violations of criminal law.   Defendant Brookside was deliberately indifferent in allowing and enforcing the policy of claiming minor infractions to be the basis for such seizures of thousands of motorists such as Plaintiff.   The stop of Plaintiff was pretextual and in conformity of that policy and practice.

51.   Plaintiff suffered mental anguish and physical pain as a result of the false imprisonment by Defendants Brookside and Jones in violation of his rights under Alabama law.

## COUNT V.   FALSE ARREST AND IMPRISONMENT BY DEFENDANTS EFFERSON AND SAVELLE IN VIOLATION OF FEDERAL LAW.

 Plaintiff incorporates herein the factual allegations of Pgf.¶¶.1-37.

52.   Plaintiff was falsely arrested and detained by Defendants Efferson and Savelle.   He was denied his personal liberty and handcuffed and held in the Brookside police car. The Defendants lacked probable cause or reasonable suspicion to believe that he had committed an offense.   There was no reason or legal basis for the arrest and imprisonment of Plaintiff.   This was in violation of his Fourth Amendment rights as protected by 42 U.S.C.§ 1983.

53.   These Defendants had no reason to detain, handcuff and arrest Plaintiff for what appeared to be a minor traffic infraction. While acting pursuant to Brookside's policy and/or practice of allowing its police officers to stop and seize motorists without legal cause, these Defendants went further and imprisoned Plaintiff in violation of his constitutional rights, eventually finding nothing to charge him with.

54.   Plaintiff suffered mental anguish and physical pain as a result of

the actions of the two Brookside Defendants who violated his rights under the
Fourth Amendment to the U. S. Constitution.

## COUNT VI.   FALSE ARREST AND IMPRISONMENT BY BROOKSIDE
## AND JONES IN VIOLATION OF FEDERAL LAW.

Plaintiff incorporates herein the factual allegations of, Pgf. ¶¶ 1-37.

55.   Plaintiff was falsely arrested and detained by the two Brookside
officer defendants, being denied his personal liberty. The Defendants lacked
probable cause or reasonable suspicion to believe that he had committed an offense
to justify such treatment.   Plaintiff was falsely arrested and imprisoned in
violation of his Fourth Amendment rights as protected by 42 U.S.C.§ 1983.

56.   The two officer Defendants were acting pursuant to Brookside's
policy and/or practice of allowing and encouraging its police to stop and seize
motorists such as Plaintiff.   Only after leaving Plaintiff handcuffed in the police
car did the two Defendants decide that they could find no reason to arrest Plaintiff
or to tow the vehicle. Their action in violation of his Fourth Amendment rights was
undertaken in furtherance of the policy of Brookside.

57.   The two Brookside officers were acting in accord with the
policy and practice approved by Brookside. Brookside has a history of allowing its
police officers to stop, seize, detain and/or search motorists travelling along and near

Interstate-22 with such action undertaken for spurious reasons in order to obtain revenue for Brookside. In fact, Brookside condoned such unconstitutional action by its officers.   This policy was directed and sanctioned by Jones.

58.   Plaintiff suffered mental anguish, emotional hurt and physical injury as a result of of the false arrest and imprisonment in violation of his rights under 42 U.S.C.§ 1983

### COUNT VII.   FALSE ARREST AND IMPRISONMENT OF PLAINTIFF AGAINST BROOKSIDE AND JONES BASED ON NEGLIGENT ACTION BY EFFERSON AND SAVELLE.

Plaintiff incorporates the factual allegations in Pgf.¶¶ 1-37.

59.   Defendants Efferson and Savelle falsely arrested and imprisoned Plaintiff by negligently stopping and detaining him.   Under Alabama precedent, a false arrest may be actionable as a result of negligence or carelessness by its police officers. (Ala. Code 11-47-190)

60.    The pattern and practice of stopping motorists along I-22 by the Brookside police gave the officers the misconception that such behavior was normal and not to be questioned.   Moreover, the lack of set policies or procedures by Brookside gave rise to the false arrest and imprisonment of Plaintiff, with it being the result of neglect, carelessness or unskillfulness in the line of duty. Officers properly trained and directed would not have falsely seized and detained

Plaintiff, and the failure of Brookside to provide such proper guidance is the result of negligence by Brookside.   Plaintiff has properly filed an affidavit of claim with the Town of Brookside.

61.   Brookside has a recent history of negligence in the hiring of police officers, hiring persons who have not been properly vetted and who have been terminated for misconduct from other law enforcement agencies. Once employed, there is a failure by Brookside to control the actions of its police employees, allowing them to stop, seize, search, charge, or arrest motorists and have their vehicles towed.   Such actions by Brookside's employees are taken in the pursuit of revenue to fund its police department.

62.   Plaintiff suffered mental anguish as a result of the actions of the two Brookside defendants who falsely arrested and detained him, causing emotional hurt and physical injury.

### COUNT VIII.   FALSE ARREST AND IMPRISONMENT OF PLAINTIFF AGAINST DEFENDANTS EFFERSON AND SAVELLE BASED ON THEIR NEGLIGENT ACTION.

Plaintiff incorporates the factual allegations in ¶¶ 1-37.

63.   Defendants Efferson and Savelle falsely arrested and imprisoned Plaintiff by negligently stopping and detaining him.   In this Count Plaintiff alleges false arrest and imprisonment resulting from negligence or carelessness by these

two police officers of Brookside.

64.   The pattern and practice of stopping motorists along I-22 by the Brookside police gave these officers the misconception that such behavior was normal and not to be questioned.   Moreover, the lack of set policies or procedures by Brookside gave rise to the false arrest and imprisonment of Plaintiff, with it being the result of neglect, carelessness or unskillfulness in the line of duty.

65.   Once employed, there is a failure by Brookside to control the actions of its police employees, allowing them to stop, seize, search, charge, or arrest motorists and have their vehicles towed.   Defendants Efferson and Savelle acted negligently in seeking the pursuit of revenue to fund Brookside's police force.

66.   Plaintiff suffered mental anguish, emotional pain and physical injury as a result of the negligent actions of Defendants Efferson and Savelle, being handcuffed and held in a police car.

## RELIEF REQUESTED

WHEREFORE, PLAINTIFF respectfully prays that the Court will take jurisdiction of this cause and upon the final hearing grant his request for the following relief:

A.   An award of appropriate monetary damages, both actual and punitive, to compensate Plaintiff for the harm complained of herein including:

20

1. Damages for the violation of Plaintiff's constitutional rights.

2. Actual compensatory damages against Brookside, as well as compensatory and punitive damages against defendants Jones, Epperson and Savelle.

B. An award of all costs of this action, including reasonable attorneys' fees and expenses.

C. Grant any other relief to which Plaintiff may be entitled,

**TRIAL BY JURY IS DEMANDED ON ALL APPLICABLE CLAIMS**

Attorneys for Plaintiff:

/s/ *W. M. Dawson*

William M. Dawson

1736 Oxmoor Road, #101
Birmingham, Alabama 35209
Telephone: 205-795-3512
E-Mail: bill@billdawsonlaw.com

/s/ *Richard A. Rice*
Richard A. Rice
The Rice Firm, LLC
N. 115 Richard Arrington Blvd.
Birmingham, AL 35203
Telephone: (205) 618-8733
rrice@rice-lawfirm.com

21

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served by E-filing the same on opposing counsel, Tom Hale and Warren Kenney and Jim Porter, this the 26th day of December, 2022/

By:   /s/ *W. M. Dawson,*
      Atty for Plaintiff.