FILED

2023 Sep-12  PM 02:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MONTAGUE MINNIFIELD,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | |
| | } | **Case No.:  2:22-cv-00299-MHH** |
| **THE TOWN OF BROOKSIDE** | } | |
| **ALABAMA,** *et al.*, | } | |
| | } | |
| **Defendants.** | } | |
| | } | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Montague Minnifield has sued the Town of Brookside, Alabama; Brookside's

Chief of Police, Michael Jones; and Officers Kyle Efferson and James Savelle of the

Brookside Police Department.  Mr. Minnifield alleges that he is a victim of the

defendants' alleged practice of unlawfully initiating traffic stops and conducting

illegal seizures to issue citations and increase the town's revenue.  Citing Rule

12(b)(6) of the Federal Rules of Civil Procedure, Brookside has asked the Court to

dismiss the claims against it.  For the reasons discussed in this order, the Court denies

Brookside's motion to dismiss.

## STANDARD OF REVIEW

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure

to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Pursuant to Rule 8(a)(2), a complaint must contain, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Generally, to survive a [Rule 12(b)(6)] motion to dismiss and meet the requirement of Fed. R. Civ. P. 8(a)(2), a complaint need not contain 'detailed factual allegations,' but rather 'only enough facts to state a claim to relief that is plausible on its face.'" *Maledy v. City of Enterprise*, 2012 WL 1028176, at *1 (M.D. Ala. Mar. 26, 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

In deciding a Rule 12(b)(6) motion to dismiss, a district court must accept well-pleaded facts as true, *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000), and must view the allegations in a complaint in the light most favorable to the non-moving party, *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). Therefore, to resolve Brookside's motion to dismiss, the Court views the allegations in the complaint in the light most favorable to Mr. Minnifield.

## FACTUAL ALLEGATIONS

In his complaint, Mr. Minnifield alleges that on March 7, 2021, at 12:30 A.M., he was traveling as a passenger in a friend's car when two black sport utility vehicles

with tinted windows and no law enforcement insignias or police lights stopped the vehicle, which was traveling at approximately 60 miles per hour on an unlit portion of Interstate 22. (Doc. 17, p. 2, ¶ 6; p. 3, ¶ 8). According to Mr. Minnifield, Officer Efferson approached the car, introduced himself as a Brookside police officer, and informed the driver that her car had an improper tag light. (Doc. 17, p. 3, ¶ 7).

Mr. Minnifield alleges that the driver provided her driver's license and insurance information to Officer Efferson and that a second officer asked Mr. Minnifield to produce his license. (Doc. 17, p. 3, ¶ 9). According to Mr. Minnifield, he informed the second officer that he (Mr. Minnifield) was a retired Birmingham police officer and that there was no reason for him to have to provide his driver's license. Mr. Minnifield asked about the officers' jurisdiction. (Doc. 17, p. 3, ¶ 10). When Mr. Minnifield tried calling Brookside, the officer canceled the call. (Doc. 17, p. 4, ¶ 10). Mr. Minnifield alleges that because the officer would not identify himself, he refused to provide his driver's license and was arrested and placed in a police car. (Doc. 17, p. 4, ¶ 11).

Mr. Minnifield remained handcuffed in the police car for approximately 30 minutes. After his release, the officers told Mr. Minnifield that the driver would be receiving a citation for driving with an improper tag light. (Doc. 17, p. 4, ¶ 12). The officers prepared a citation for violation of ALA. CODE § 32-5-240 and cited the driver's father who was not on the scene or driving the vehicle at the time of the

3

stop.  (Doc. 17, p. 4, ¶ 13).

Mr. Minnifield alleges that he is not the only person who Brookside police officers have unjustifiably pulled over and detained.  According to Mr. Minnifield, the Brookside Police Department, under Chief Jones's supervision, regularly conducted traffic stops and searches without probable cause to amass charges against motorists and increase Brookside's revenue from citations and fines.  (Doc. 17, pp. 5–6, ¶¶ 17–19).

## DISCUSSION

### Section 1983 Claims

The Town of Brookside is subject to suit under 42 U.S.C. § 1983 for constitutional violations it causes pursuant to a policy or custom of the town.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).  Mr. Minnifield alleges that Brookside violated his rights under the Fourth and Fourteenth Amendments of the United States Constitution.  (Doc. 17, pp. 12, 17).

Brookside raises two arguments in support of its motion to dismiss Mr. Minnifield's § 1983 claims.  First, Brookside argues that its police officers had probable cause to stop the vehicle in which Mr. Minnifield was riding and that the seizure was reasonable under the circumstances such that no constitutional violation occurred that could give rise to a § 1983 claim.  (Doc. 20, pp. 8–10).  Second, Brookside argues that Mr. Minnifield has not identified a custom or policy that was

4

the "moving force" behind the constitutional violations he alleges.   (Doc. 20, pp. 5–8).

### *Probable Cause*

The officers' decision to conduct a traffic stop was reasonable if they had "probable cause to believe that a traffic violation ha[d] occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996).   Mr. Minnifield alleges that Officer Efferson initiated the traffic stop because the car in which Mr. Minnifield was riding did not have a proper tag light.   (Doc. 17, p. 3, ¶ 7).   Alabama law requires that "[e]very motor vehicle shall have a tail lamp or a separate lamp so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of 50 feet to the rear."   ALA. CODE § 32-5-240(c)(3).

Mr. Minnifield does not contend that the car at issue complied with § 32-5-240(c)(3).   (Doc. 22, pp. 6, 12).   Instead, he argues that the officers initiated the traffic stop as a pretext to find other violations and raise revenue for Brookside through fines and citations.   (Doc. 22, pp. 4–5).   "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis"; therefore, the Supreme Court has "foreclose[d] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." *Whren*, 517 U.S. at 813; *see also United States v. Harrelson*, 465 Fed. Appx. 866, 868 (11th Cir. 2012).   Because the officers had probable cause to initiate a traffic

stop, the initial stop does not provide the basis for a § 1983 claim against Brookside.

But "[e]ven if the police have reasonable suspicion to make a traffic stop, they do not have unfettered authority to detain a person indefinitely.  The detention is 'limited in scope and duration.'"  *United States v. Campbell*, 26 F.4th 860, 881 (11th Cir.), *cert. denied*, 143 S. Ct. 95 (2022) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)).  "Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, and attend to related safety concerns."  *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (citations omitted).  "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed."  *Rodriguez*, 575 U.S. at 354.

Ordinary inquiries incident to a traffic stop include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance.  These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly."  *Rodriguez*, 575 U.S. at 355 (citations omitted).  On the other hand, some inquiries not incident to a traffic stop include "asking about a passenger's gang affiliation during a traffic stop," and "using a dog to search for contraband."  *Campbell*, 26 F.4th at 882 (first citing *Arizona v. Johnson*, 555 U.S. 323, 332–34 (2009); and then citing *Rodriguez*, 575 U.S. at 355–56).

6

"Unrelated inquiries are permitted so long as they do not add time to the stop."

*Campbell*, 26 F.4th at 882 (citing *Rodriguez*, 575 U.S. at 355 ("An officer . . . may

conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he

may not do so in a way that prolongs the stop, absent . . . reasonable suspicion[.]")).

"[C]ourts must look at what an officer actually does: if he 'can complete traffic-

based inquiries expeditiously, then that is the amount of "time reasonably required

to complete [the stop's] mission." ' " *Campbell*, 26 F.4th at 883 (alteration in

original) (citing *Rodriguez*, 575 U.S. at 357).  A traffic stop is unlawfully prolonged

if the officer "(1) conduct[s] an unrelated inquiry aimed at investigating other crimes

(2) that adds time to the stop (3) without reasonable suspicion." *Campbell*, 26 F.4th

at 884.

Mr. Minnifield challenges his detention in the back of the police SUV after

the traffic stop began.  According to Brookside, Mr. Minnifield prolonged the traffic

stop by refusing to comply with the officer's requests to produce his driver's license.

(Doc. 20, p. 11).  According to Brookside, cases from the First, Fourth, Sixth, and

Tenth Circuit Courts of Appeals authorize officers to request identification from

passengers during a lawful traffic stop without violating the Fourth Amendment.

(Doc. 26, pp. 3–6).  The decisions Brookside cites do not create a per se rule.  The

decisions indicate that, absent reasonable suspicion, a police officer, during a lawful

traffic stop, may ask a passenger for identification if doing so does not prolong the

stop.[1]

The cases Brookside cites are consistent with the Eleventh Circuit Court of Appeal's precedent. In *United States v. Purcell*, an officer requested identification from the car's passengers, requested the passengers' criminal histories through his radio, and, while waiting for the criminal history information, "began writing a warning citation to [the driver] for following too closely." 236 F.3d 1274, 1276 (11th Cir. 2001). The Eleventh Circuit stated that "[t]he request for criminal histories as part of a routine computer check [was] justified for officer safety" and

_____

[1] *United States v. Fernandez*, 600 F.3d 56, 57, 62 (1st Cir. 2010) ("This case raises an important question of Fourth Amendment law . . . : whether a police officer may request identifying information from passengers in a vehicle stopped for a traffic violation without particularized suspicion that the passengers pose a safety risk or are violating the law. . . . So long as the request d[oes] not 'measurably extend the duration of the stop,' [an officer] d[oes] not need an independent justification to ask [a passenger] for identification.") (citations omitted); *United States v. Soriano-Jarquin*, 492 F.3d 495, 501 (4th Cir. 2007) ("Trooper Ward's request for identification did not prolong the stop, as it occurred while the police trainee checked the driver's license and registration and prepared his citations. While Trooper Ward did contact the ICE, which asked him to hold the vehicle for an administrative immigration inquiry, that contact came only after the driver of the van indicated that the passengers were illegal aliens. Because the request did not extend the stop, it did not alter its lawful character."); *United States v. Guijon-Ortiz*, 660 F.3d 757, 765 (4th Cir. 2011) ("[O]fficer[s] may . . . 'in the interest of personal safety,' request that the passengers in the vehicle provide identification, at least so long as the request does not prolong the seizure. Similarly, the officer may 'inquir[e] into matters unrelated to the justification for the traffic stop,' and may take other actions that do not constitute 'searches' within the meaning of the Fourth Amendment, . . . but again only 'so long as those inquiries [or other actions] do not measurably extend the duration of the stop.'") (citations omitted); *United States v. Smith*, 601 F.3d 530, 542 (6th Cir. 2010) ("Once a stop begins, . . . detaining the motorist 'any longer than is reasonably necessary to issue the traffic citation' requires 'reasonable suspicion that the individual has engaged in more extensive criminal conduct.' . . . Because the initial stop was supported by probable cause and because each extension of the stop was supported by reasonable suspicion of additional criminal activity, the evidence obtained from the stop was admissible.") (citation omitted); *United States v. Rice*, 483 F.3d 1079, 1084 (10th Cir. 2007) ("Because [the officer's] actions did not unreasonably extend the traffic stop, [the officer] did not need reasonable suspicion to request identification from Rice, run a background check on him, or remove Rice or any other passenger from the car.").

was "both reasonable and minimally intrusive." *Purcell*, 236 F.3d at 1278. The Eleventh Circuit declined to create a bright-line rule "that requesting a criminal history check is a reasonable, constitutional part of all or most traffic stops," and held that "[u]nder some circumstances a criminal record request might lengthen a traffic stop beyond what is reasonable in a particular case. After a certain point, this might constitute an unreasonable detention." *Purcell*, 236 F.3d at 1278–79. The Eleventh Circuit stated that, "so long as the computer check does not prolong the traffic stop beyond a reasonable amount of time under the circumstances of the stop, the inclusion of a request for criminal histories does not constitute a Fourth Amendment violation." *Purcell*, 236 F.3d at 1278–79.

Mr. Minnifield sufficiently alleges that the Brookside officers abandoned the purpose of the initial traffic stop and instead pursued a side investigation into Mr. Minnifield's identity for approximately 30 minutes without reasonable suspicion. Mr. Minnifield alleges that an officer asked for his driver's license at or around the same time that the driver of the car provided her driver's license and insurance card to Officer Efferson. (Doc. 17, p. 3, ¶¶ 7, 9). It is reasonable to infer that once Officer Efferson had the driver's information, a citation for the tag light violation should have been forthcoming. Mr. Minnifield alleges that at least 30 minutes passed between the beginning of the stop and the issuance of the citation and that the officers did not issue a citation until they released him from their patrol car. (Doc. 17, p. 4,

¶ 12).  At the motion to dismiss stage, Mr. Minnifield has sufficiently alleged that his detention went "beyond a reasonable amount of time under the circumstances of the stop" such that the officers violated his Fourth Amendment right.  *Purcell*, 236 F.3d at 1278–79.[2]

Mr. Minnifield's refusal to provide his driver's license did not give rise to reasonable suspicion that might enable officers to prolong the stop.  "Under the Fourth Amendment, an official can address questions to a person at any time, and that person is free 'to ignore his interrogator and walk away.'"  *Young v. Brady*, 793 Fed. Appx. 905, 909 (11th Cir. 2019) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).  If an officer makes a *Terry* stop based on reasonable suspicion, the circumstances giving rise to the reasonable suspicion "must exist at the onset of the stop."  *Young*, 793 Fed. Appx. at 909 (citing *Hiibel v. Sixth Judicial Dist. Ct. of Nev*., 542 U.S. 177, 188 (2004)).  "Objective justification does not exist based on a mere refusal to cooperate with the official."  *Young*, 793 Fed. Appx. at 909; *see also United States v. Boyce*, 351 F.3d 1102, 1110 (11th Cir. 2003) ("The

---

[2] *See also United States v. Toombs*, ---F. Supp. 3d---, 2023 WL 3224962, at *11 (N.D. Ala. May 3, 2023) ("Powers could have immediately radioed the dispatch officer, and instead he asked about Toombs' living arrangements and fished for information on Toombs' decision to ride in the backseat.  These inquiries crossed over into areas unrelated to the traffic stop or related safety concerns.  And these questions prolonged the stop unless the Government has established that Powers was diligently conducting other tasks related to the stop at the time. . . . For this reason, Powers prolonged the stop by asking this series of questions about Toombs. By doing so, he violated Toombs' constitutional rights unless he had developed reasonable suspicion of criminal activity by that time.").

police cannot base their decision to prolong a traffic stop on the detainee's refusal to consent to a search. Such a refusal may only be considered when the police have already observed, before asking for permission to search, facts sufficient to raise a reasonable suspicion.").

At this stage, viewing the allegations in the complaint in the light most favorable to Mr. Minnifield, the officers did not have reasonable suspicion to question and detain Mr. Minnifield. Accordingly, Mr. Minnifield has alleged sufficient facts to establish that Brookside violated his Fourth Amendment right by unlawfully detaining him during the traffic stop.

### *Brookside's Custom or Policy*

Brookside is liable under § 1983 if it caused the constitutional violations alleged; respondeat superior or vicarious liability cannot provide a basis for liability against Brookside for its officers' actions. *Monell*, 436 U.S. at 691; *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). To maintain his § 1983 claim against Brookside, Mr. Minnifield must identify a Brookside policy or custom that caused his injuries. *See Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003). Mr. Minnifield may allege Brookside's policy or custom by identifying "either (1) an officially promulgated [town] policy or (2) an unofficial custom or practice of the [town] shown through the repeated acts of a final policymaker for the [town]." *Grech*, 335 F.3d at 1329 (citing *Monell*, 436 U.S. at 694). Because towns like

Brookside "rarely will have an officially-adopted policy of permitting a particular

constitutional violation," Mr. Minnifield must show that Brookside "has a custom or

practice" of permitting the constitutional violation at issue and that Brookside's

custom or practice is the "moving force [behind] the constitutional violation."

*Grech*, 335 F.3d at 1330 (alteration in original) (quoting *City of Canton*, 489 U.S. at

389).

In Counts Two and Six of his complaint, Mr. Minnifield alleges that

Brookside violated his Fourth and Fourteenth Amendment rights by promoting a

custom or policy that led to his unlawful detention.  (Doc. 17, pp. 12, 17).  According

to Mr. Minnifield, "Brookside has operated its police and court system with a

primary objective of obtaining revenue from motorists travelling on or near

Interstate-22[,] [and] [the town] has had a continued practice of stopping and

searching scores of vehicles daily, doing so without probable cause or reasonable

suspicion of wrongdoing." (Doc. 17, p. 6, ¶ 18).  Mr. Minnifield alleges that despite

Brookside's small size and the limited jurisdiction of its police force, in 2020,

"Brookside issued over 3,000 citations, gave over 2,000 traffic warnings and made

1,273 misdemeanor arrests." (Doc. 17, pp. 5–6, ¶¶ 15–18).

Mr. Minnifield alleges that Chief Jones was the policymaker responsible for

the unlawful policies and practices of the Brookside police department.  (Doc. 17,

p. 7, ¶ 21).  According to Mr. Minnifield, from the time Officer Jones became chief

in 2018 until his termination, "Brookside embarked on a policy and practice of directing its police and court system primarily as a means of generating revenue. The numbers of police officers multiplied as did the arrests and impoundment of vehicles." (Doc. 17, p. 9, ¶ 29). Mr. Minnifield alleges that in 2017, the town's revenue from "fines, fees, forfeitures and jail fees" was $51,473 and that under Chief Jones, the revenue increased to $187,445 in 2019, $610,307 in 2020, and $710,025 in 2021. (Doc. 17, pp. 9–10, ¶ 31). According to Mr. Minnifield, by 2020, "court and forfeiture fees made up almost half of Brookside's annual revenue." (Doc. 17, p. 10, ¶ 31). Further, "[f]or years, including that of Plaintiff's seizure, Brookside had no budget but operated on funds from its police and court. This increased revenue was used to employ more police officers and substantially increase the salary of the Town's prosecutor and judge." (Doc. 17, p. 7, ¶ 22). Mr. Minnifield alleges that in an interview, Chief Jones acknowledged Brookside's "600% increase" in revenue, stating that revenue could increase further with "more officers and more productivity." (Doc. 17, p. 10, ¶ 34).

At this stage, Mr. Minnifield has alleged sufficient facts to state a claim for relief that is plausible on its face based on his contention that, following Chief Jones's appointment in 2018, the Brookside police department began conducting

unlawful traffic stops to issue more citations to increase the town's revenue.[3] Accordingly, the Court will not dismiss Counts Two and Six of Mr. Minnifield's complaint.

### *State Law Claims*

Mr. Minnifield has consented to the dismissal of his state law claims against Brookside.  (Doc. 22, p. 13).  Accordingly, the Court will dismiss Counts Four and Seven against Brookside.

## CONCLUSION

For the reasons discussed in this order, the Court dismisses Mr. Minnifield's state law claims against Brookside and denies Brookside's motion to dismiss the remaining claims against it.  The Court lifts the stay in this case.  Per the Court's Initial Order, no later than 21 days from the entry of this order, the parties should submit a joint Rule 26(f) report and proposed scheduling order.

---

[3] *See Moffett v. Town of Brookside*, 2022 WL 16973255, at *5 (N.D. Ala. Nov. 16, 2022) ("Here, Plaintiffs claim that 'Brookside has operated its police and court system with a primary objective of obtaining revenue from motorists and has had a continued practice of stopping and searching scores of vehicles daily, doing so without probable cause or reasonable suspicion of wrongdoing.' They further contend that 'Police Chief Jones was directly responsible for implementing these policies and practices and actively participated in them.'  Plaintiffs assert that Officer Price acted pursuant to these policies and practices when he detained and searched Plaintiffs and impounded Michelle's car.  At this stage of the litigation, Plaintiffs have presented sufficient evidence that creates a genuine factual issue for trial.").

**DONE** and **ORDERED** this September 12, 2023.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE